The People of the State of Illinois, Plaintiff-Appellee, *v.* William Quinn, Defendant-Appellant.

(No. 12283;

Fourth District—November 21, 1974.

John F. McNichols, J. Daniel Stewart, and Thomas Nelson, all of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (Michael Prall, of Circuit Attorneys Project, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Following conviction in a jury trial, the defendant was sentenced 1 to 3 years for criminal damage to property and 2½ to 5 years for aggravated battery. The defendant raises two points in this court, each of which is without substance.

■■ The defendant first contends that he was prejudiced during the *voir dire* examination of the jury when one prospective juror was asked whether or not he had any knowledge of the case as the court stated it to him. Juror Krause: "Just what I have read in the papers." The court: "Is there anything, what you have read in the papers that might create an opinion or in any way prejudice you in serving this cause?" Juror Krause: "I have lived in Bloomington sixteen years, and if this William Quinn is Billy Quinn referred to commonly in the papers in the past, I know of him." The Court: "I am not advised of that * * *." Defense counsel then moved for a mistrial stating that the defendant was prejudiced in that this juror had gotten before the jury the fact that "Billy Quinn has been known in the newspapers for 16 years as a person who would automatically be guilty of a crime." The court then stated it thought counsel had misunderstood the juror. The juror had merely indicated that if this individual is Billy Quinn, he had been acquainted with him a long time in Bloomington and that is the sum and substance of the statement. Counsel then said that juror's statement was that he had read about him in the papers. The court then stated: "Are you saying that this is Billy Quinn?" Counsel: "Yes, this man has also been known as Billy Quinn. There is no doubt about it." These colloquies between court and counsel took place outside the presence of the jury and in addition juror Krause was dismissed. The trial court properly denied a motion for a mistrial. The position of trial counsel and of counsel on appeal is a jaundiced approach to the realities of trial practice. In *People v. Malmenato*, 14 Ill.2d 52, 150 N.E.2d 806, on the second day of the trial, a newspaper published an item, "Malmenato reportedly has a record of 43 arrests more or less and no convictions." The court on the following morning interrogated the jurors and found only one of them had read the article. He was directed not to repeat its context in the presence of the other jurors and stated when questioned by the trial court as to whether he could be a fair and impartial juror, "It didn't have that much effect on me." In that case the supreme court discussed that an accused is entitled to a fair trial and that his rights must be jealously guarded by the court and by counsel, and where any prejudice is reasonably present or intimated a new trial should be granted. There being no prejudice a new trial was denied. In the instant case we would be required to infer that the jury made the same inference of previous convictions that defense counsel read into the juror's statement and then add inference on inference by inferring that it supplied to the remainder of the jury the same conclusion and thus tainted the verdict. This strains the language used by the juror or any reasonable inference therefrom. No prejudice being shown here or reasonably intimated, the trial court

did not abuse its discretion. In addition, the trial court would not permit the State to use evidence of prior convictions to impeach Mr. Quinn's testimony as a witness.

The occurrence incident is properly described as a tavern brawl wherein the bartender refused to serve Mr. Quinn because of disturbances between others at the bar with Mr. Quinn's acquaintances. Defendant's brother hit the bartender in the face. Defendant and his brother threw stools over the bar and the bartender threatened to call the police if they did not leave. The bartender turned to call the police and the defendant threw a table across the bar striking the bartender on the forearm and was looking at the bartender as he threw the table. Thereafter defendant and his brother proceeded to knock table tops off their bases, chair seats had come unscrewed, ceiling tiles were damaged, a Budweiser light was broken, the bar itself was damaged and bottles of liquor behind the bar were broken. Damage to the interior of the tavern amounted to some $400-$500.

■■ Defendant argues that the aggravated battery charge is part and parcel of the criminal damage charge and that the aggravated battery was impelled by no different or separate motives and cites *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679, *People v. Lerch*, 52 Ill.2d 78, 284 N.E.2d 293, and *People v. Russo*, 52 Ill.2d 425, 288 N.E.2d 412. Defendant likewise cites our *People v. Long*, 12 Ill.App.3d 974, 298 N.E.2d 784. While it may be said that the incidents here referred to arose out of an interrupted chain of circumstances, it seems clear to us that that motivation could very well be said to be independent. Certainly tossing a table at the bartender, and there was motive for doing that in the refusal of the bartender to serve the defendant another drink, and the continued damage to the property thereafter were separate and distinct motives and required different elements of proof. (See *People v. Johnson*, 44 Ill.2d 463, 256 N.E.2d 343; *People v. Harper*, 50 Ill.2d 296, 278 N.E.2d 771.) That there were separate criminal acts not produced by the same act is quite apparent and there appears to be no reason why the separate convictions cannot stand side by side.

■■ The sentence of 2½ to 5 years is excessive so far as the minimum is concerned. This error was waived in oral argument on the theory that *People ex rel. Weaver v. Longo*, 57 Ill.2d 67, 309 N.E.2d 581, is self-executing and that it became the statutory duty of the Parole and Pardon Board to determine the parole eligibility under the new Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001 *et seq.*). It would seem that such provision is thus self-executing. Nevertheless, to avoid any possibility of misunderstanding, the judgment of the trial court is affirmed and the sentence imposed under that judgment is vacated and

the cause remanded to the trial court with directions to reduce the minimum sentence of 1 year, 8 months, and to issue an amended *mittimus*.

Judgment affirmed. Sentence reduced and new *mittimus* ordered.

TRAPP and CRAVEN, JJ., concur.